15414

*EX PARTE:* ROWLEY *ET AL.*
*IN RE:* WALES FIKE MORRIS v. UNITY LIFE INS. CO. *ET AL.*

(20 S. E. (2d), 383)

September, 1941.

*Mr. W. E. Bowen* and *Mr. C. S. Bowen,* both of Greenville, Counsel for Appellants,

*Messrs. Wise & Whaley* and *Mr. John C. Payne,* all of Columbia, and *Mr. James E. Leppard,* of Chesterfield, Counsel for Respondents,

Counsel for Appellants, in Reply,

May 14, 1942.

The Opinion of the Court was delivered by MR. ASSO-CIATE JUSTICE STUKES:

The disposition of this appeal is related to the judgments of this Court filed simultaneously herewith in the proceeding in the original jurisdiction entitled W. Claude Powell, Jr., individually and as a representative of all members of and certificate (policy) holders in the *Unity Life Insurance Co., etc., Petitioner, v. Frank B. Gary, Jr., as Executive Vice-President of the Unity Life Insurance Co. et al.,* respondents, 20 S. E. (2d), 391, and in the appeal from the Court of Common Pleas for Richland County in the action entitled *Ex Parte Frank B. Gary, Jr., Executive Vice-President of Unity Life Insurance Co., Appellant, v. J. F. Atkinson et al.,* respondents (*In re: Wales Fike Morris, Plaintiff, v. Unity Life Insurance Co. et al., Defendants*), 20 S. E. (2d), 388, and concurrent consideration of them will obviate the repetition of some of the facts there stated.

In the *Morris case* his Honor, Circuit Judge Mann, on February 1, 1941, after hearing arguments, appointed Frank B. Gary, Jr., "Executive Vice-President" of Unity Life Insurance Company to take charge of the assets, books and records of the latter pending the final determination of the cause, with the power and authority set forth in Section 584 of the Code of 1932, with certain express directions as to the continuance of the operation of the company, under the terms of which order Gary qualified and undertook his duties and there is no complaint concerning his manner of performance; the order further continued in force the terms of an injunction granted previously by another Circuit Judge in another action in the Common Pleas Court entitled *Bell, plaintiff, against Unity Life Insurance Company and others, defendants,* whereby all persons, present and former policyholders and other creditors were and are restrained from

proceeding upon any cause of action against the company or other defendants or against the executive vice-president except in this action and until the further order of the Court.

On June 24, 1941, the present appellants, policyholders in the company, served notice of motion for themselves and others in like situation upon the attorneys for the parties in the Morris action and upon the attorneys for the executive vice-president for an order setting aside the receivership for the reasons, (1) that the action was not instituted by or under the authority of the Attorney General, thus failing of compliance with Section 8062 of the 1932 Code, (2) that the allegations of the complaint lack such of absence of an adequate remedy at law, irreparable injury to plaintiff and insolvency of the company, and (3) that no value of the property was fixed by the order which therefore also violated Subdivisions 9 and 10 of Section 584 of the Code.

The company and its president undertook to join in the motion and through the same attorneys served notice of additional grounds, (1) that no report had been filed by the State Insurance Commissioner with the Attorney General (required by Section 8061 of the Code) and no corresponding notice, required by the same Code section, was given the officers of the company by the Attorney General or other public official prior to the commencement of the action, and (3) that there is no main action to which the receivership can be ancillary.

Argument upon this motion was properly heard by the Honorable Arthur L. Gaston, Judge of the Sixth Judicial Circuit, at his Chambers at Chester, on July 29, 1941. His order was necessarily lengthy on account of the numerous issues raised by the various attacks upon the validity of the receivership, which he refused to disturb.

From it the policyholders Rowley and Beard and the company and its president, Hoile, appeal upon numerous exceptions which properly raise and present the fifteen questions argued by them. They will not be treated separately

but have all been considered and will be disposed of in what will be said.

Several of them will be answered adversely to the appellants by our decision of the main controversy, which embodies the conclusion that the Court has jurisdiction to entertain this action despite the provisions of Article 3 of Chapter 157 of the Code of 1932, relating to Fraternal Benefit Associations which the Unity Company is. It is earnestly argued that under the terms of Sections 8061 and 8062, particularly, such an action as this may be maintained only by the Attorney General after presentation of the facts to him by the State Insurance Commissioner; and that Section 8062 constitutes an absolute bar to the prosecution of the action because it was not instituted by the Attorney General.

The wisdom of the law is manifest and while its interpretation has not heretofore been necessary by this Court, similar statutes have been construed by the Courts of last resort of a number of other states. Industrious counsel for the appellants have submitted many authorities which we copy in part, as follows:

"In *Swan v. Mutual Reserve Fund Life Ass'n*, 155 N. Y., 9, 49 N. E., 258 [262], the Court said:

" ' \* \* \* The effect of the legislation was not to cut off the rights of a party, but merely to prescribe the form of the remedy which he must avail himself of in the pursuit of his object to compel the corporation to perform acts or to account as to matters in respect of which it may be alleged to have been neglectful or wasteful or mistaken. The plaintiff is not maintaining a purely and essentially private action, with the results of which only himself and the corporation defendant are concerned; but he is maintaining one which concerns a large body of the public, and the condition and management of the affairs of a particular class of corporations, which have been the especial objects of the care and watchfulness of the state. It is no hardship to him, and it

impairs none of the force of the obligations of the company to him that he should be compelled to follow the particular procedure declared by statute.   *   *   *

" 'If the views which I think we should adopt upon the question before us are not correct, then these corporations, chartered by the state as they are for the common benefit of those who wish to co-operate in the business of life insurance, are at the mercy of any member who, with unworthy or dishonest motives, chooses to attack them, and, by threatened interference with their methods or management, may compel them to make a settlement with him in order to secure, as was said in the *Uhlman case* [*Uhlman v. New York Life Ins. Co.,* 109 N. Y., 421, 17 N. E., 363, 4 Am. St. Rep. 482], freedom from troublesome, expensive, unnecessary and wholly disingenuous investigations into affairs and accounts running through many years.' "

In *Baird et al. v. Modern Samaritans et al.,* 162 Minn., 274, 202 N. W., 498 [499], is the following:

" ' *   *   * Good reasons readily suggest themselves for the enactment of section 3482. In associations of this sort every one insured is a member. If any dissatisfied or disgruntled member on his own motion may drag the association and its governing body into Court as to the conduct of its business or methods of procedure, its usefulness will be seriously impaired and its very existence endangered. The mere fact that an action is brought affects the standing of such an association without regard to whether or not any basis exists for so doing.' "

"In *Delaney et al. v. Grand Lodge,* 244 Mass., 556, 138 N. E., 918 [924], the Supreme Judicial Court of Massachusetts said:

" 'This branch of the present proceeding is within the scope of this statute. It doubtless was designed to prevent hostile attacks upon an institution in which large numbers of persons are interested, except through the instrumentality of a public officer, and to render impossible the harm which

might come to a solvent and worthy beneficiary corporation insuring great numbers of people through ill-considered proceedings. The business of insurance is invested with general public interest and is subject to state regulation within rational bounds. Any act of the Legislature directed to this end within reasonable limits will be upheld.' "

However, the Courts of some other states, notably Alabama and Colorado, have held in effect that the bar of our Section 8062 is restricted to such associations as have fallen into the toils described in the preceding Section 8061, and that in cases of insolvency or fraudulent operation, the Court will entertain an application for receivership on the part of an individual certificate holder; and respondent submits these decisions and strongly argues them.

But we think it is not necessary for this Court to now take its choice of these conflicting rules existing in other jurisdictions for Sections 8061 and 8062 of the Code clearly contemplate the activity of a qualified State Insurance Commissioner, in the absence of which we do not think that the provisions of the sections are at all applicable. The order appointing the Receiver in this proceeding was not made upon its commencement or even shortly thereafter; instead the matter was referred to the Master under a general order of reference and it was pending before him for almost a year during which time he took a great deal of testimony and received in evidence many exhibits, all of which were before the Circuit Court when it made the order, the rescission of which is now sought by the appellants.

Before it and us is a contract between the Insurance Commissioner and the president of the Unity Company, dated April 8, 1936, whereby the services of the commissioner were to be devoted to the company after its planned reorganization upon a stock basis and the commissioner was to have been owner of half of the stock without consideration other than his obligation under the contract. In fairness to him it should be said that he submitted evidence of his prompt subsequent withdrawal from the contract which he

contemplated consummating only upon resignation from his office. (See Section 7937 of the Code of 1932: " * * * The insurance commissioner shall have no interest in any insurance company or in any insurance agency in this State or in any State while holding said office.")

But we think that it cannot be doubted that this incident absolutely disqualified the commissioner from any official act concerning Unity Life Insurance Company, and, as above indicated, the statutes which looked to such action on his part were thereby rendered inapplicable and cannot be set up as a shield in this case against the jurisdiction of the Court in the exercise of its ordinary equity powers. It should be added that it is unthinkable that the franchise and other assets of the company should be returned to its president and other directors in view of the contents of the record which need not be detailed. Under the facts and circumstances of this case such action would belie the very name of a Court of equity unless there were no alternative.

This disposition of this principal question in the appeal obviates the necessity of reviewing other interesting questions which have been ably argued, such as the right of the president of the company to appear for it and for himself, in *propria persona,* without an order of the Circuit Court (see Rule 7 thereof) after having been earlier represented in the litigation by eminent counsel; whether the pleadings of these appellants should be ignored for lack of proper verification; whether all of the appellants are bound by their failure to appeal from the original order appointing the Receiver; and whether they are estopped by the transactions which occurred at the time of, and during the several months after, the rendition of the order, and prior to the motion for revocation.

However, granting the propriety of the appellants' position regarding the matters just mentioned and passing over them for the consideration of the substance of the other

grounds of appeal, we find no merit in them. They will be briefly treated.

It is contended that the receivership must fall for lack of a proper action to which it is ancillary. This is based upon a misconception of the nature and form of the action which is mainly for the rescue by the Court of funds constituting a trust, the insurance reserves against the policies issued by the defendant company, and for a reorganization of it, in effect a substitution of trustees. In the Powell action in the original jurisdiction of this Court, referred to hereinabove, it has been established and held that these insurance reserves are a trust fund for the benefit of the holders of current certificates of insurance. The preservation and enforcement of trusts has long been the exclusive function of equity and includes the appointment, removal and substitution of trustees. *Tucker v. Palmer*, 3 Brev., 47, *Epworth Orphanage v. Peoples Bank*, 199 S. C., 385, 19 S. E. (2d), 481, filed March 31, 1942. Other pertinent South Carolina decisions will be found in 33 West South Eastern Digest, Trusts, 257 *et seq*. The appointment of a Receiver was incidental. Insolvency of the company was not necessary, but is very clearly indicated by the facts before us.

The following applicable excerpt is taken from the paragraph entitled "Trusts and Trustees" in the discussion of the subject of Receivers in 23 R. C. L., 31: "In order to justify the appointment of a Receiver for trust property there must be either misconduct, waste, mismanagement, misapplication, or improper disposition of the trust fund, or a denial or destruction of the trust estate by the trustee. But where the property, by any of the acts, becomes endangered or placed in a state of insecurity, which due care would have prevented, it is proper to appoint a Receiver for the trust estate, to preserve it from loss, whatever the nature of the paintiff's right, and whatever may be the nature of the property. So manifest abuse of a trust by a habitual and prospective course of dealing, bringing the property into danger, is sufficient ground."

It is further said that Unity Life Insurance Company, although a fraternal benefit association and organized under the special statutes therefor, is nevertheless a corporation and subject to the general law governing such except as modified by these special statutes, and the complaint contains no allegations of fruitless efforts by plaintiff to obtain a remedy for his alleged wrongs within the corporation and that the rights which he asserts against the president and directors belong to the corporation and not to him, a policyholder, who is in the nature of a stockholder in a private corporation. But if the general rule to this effect be applicable, undoubtedly the complaint contains allegations which bring the case within the exception to the rule illustrated by the decisions of this Court in *Stahn v. Catawba Mills,* 53 S. C., 519, 31 S. E., 498, and *Equitable Trust Co. v. Columbia National Bank,* 145 S. C., 91, 142 S. E., 811. The many statements of fraud and machinations of the president and directors of the company amply indicate the futility of any effort within the corporation or hope of action for redress by it.

The earnest contention that the appointment of the Receiver should be held invalid for failure of the order to contain a fixation of the value of the property involved, in accordance with Subdivision (10) of Section 584 of the Code of 1932, is untenable by the appellants Rowley and Beard for the reason that the requirement is for the benefit of him or them who is or are in possession of the property and to enable him or them to replevy it; but the appellants mentioned were not in possession of the property and they cannot make complaint. *Truesdell v. Johnson,* 144 S. C., 188, 142 S. E., 343. Section 99, Receivers, 53 C. J., 82, is in part as follows, with citations of supporting authorities: "Also a person who is not affected by a particular ground of objection may not present it."

As to the company and its president, Hoile, there is no question of the representation of them in this action by several competent attorneys when the order

was granted and that these attorneys participated in the preparation of the order and were consulted upon the nature of its details, so surely they cannot now through other counsel, whose services were subsequently obtained, question the propriety of the omission of the usual valuation clause.

Finally, it is said in argument that the action is not a proper class action under Section 406 of the Code, but we think it is, and so hold. In fact, the allegations and prayer of the complaint are expressly made for plaintiff's benefit "and the other policyholders," and the record indicates that the litigation is being so conducted. The plaintiff thought it necessary for the protection of the policyholders to procure the appointment of a Receiver as did others who intervened. On the contrary there was intervention by other policyholders who resisted the appointment of the Receiver and so expressly stated their position at the reference at which they were first admitted to participate. Still others appeared by counsel at the argument of appellants' motion before Judge Gaston but declined to join in the effort to restore the assets of the company to its former officers. The numerous members of the class, the policyholders, make the Code provision referred to unquestionably applicable. *Evans v. Creech,* 187 S. C., 371, 197 S. E., 365, and cases cited.

The suggestion that the policyholders cannot constitute a class because their rights are antagonistic in view of the contention that in a mutual insurance company each is the insurer of the other, but the controversy does not involve the failure of the company to pay death claims and fortunately the record indicates that all such have been met both during the operation by the officers of the company and by the Receiver appointed in this action. The interests and claims of the policyholders sought to be protected and preserved in this action are principally against the reserve funds of the association and it seems to us that all the policyholders form a most appropriate class for application of the statute.

. As stated in the outset, all of appellants' points have been carefully considered and none can be sustained. But it is plainly apparent that the rights of the appealing policy-holders will be fully protected in this class action, particularly in view of the zeal and industry of their counsel.

The exceptions are overruled and the judgment affirmed.

Mr. Chief Justice Bonham, Messrs. Associate Justices Baker and Fishburne, and Circuit Judge G. B. Greene, Acting Associate Justice, concur.